UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

S-P ASSOCIATES, LP f/k/a SUBURBAN PLAZA
ASSOCIATES
                                                  Plaintiff,                    DECISION AND ORDER
-vs-
                                                                               07-CV-6515 CJS
UNITED CLEANERS & LAUNDERERS, INC. a/k/a
UNITED DRY CLEANING ROCHESTER
CORPORATION d/b/a UNITED CLEANERS,
HANIF SULEMAN, NASRULLA H. SULEMAN,
ALI SHA MITHANI and AMIR MITHANI

                                                  Defendants.
_____

## INTRODUCTION

This matter is before the Court on Plaintiff's motion for default judgment. (Doc. No.

17.)  On October 18, 2007, S-P Associates, LP ("Plaintiff"), owners of property located at

2199 East Henrietta Road, Suburban Plaza, Town of Brighton, State of New York,

commenced this action against United Cleaners and Launderers, Inc., also known as

United Dry Cleaning Rochester Corporation doing business as United Cleaners, Hanif

Suleman, Nasrullah Suleman, Ali Sha Mithani, and Amir Mithani ("Defendants"). (Doc.

No. 1.)  Plaintiff seeks compensation for environmental contamination caused by

releases of contaminants from a dry cleaning facility operated by Defendants. (*Id*. ¶¶ 1,

2)  Plaintiff's action is pursuant to the Comprehensive Environmental Response,

Compensation and Liability Act ("CERCLA"), 41 U.S.C. § 9601, *et seq*., state statutory

and common law theories, including Article 37 of the New York Environmental

Conservation Law ("ECL"). (*Id*. ¶ 3)  On January 18, 2011, Plaintiff filed the present

motion for default judgment under Rule 55 of the Federal Rules of Civil Procedure

seeking compensation in the sum of $401,038.10. (Doc. No. 17.)  For the reasons

discussed hereinafter, Plaintiff's motion is granted in part and denied in part. The Court

will schedule an inquest regarding the amount of damages to be awarded to Plaintiff.

### BACKGROUND

Unless otherwise noted the following facts are taken from the complaint and are

assumed to be true for purposes of this motion. (Doc. No. 1.)  In or about April, 1993,

Defendants entered into a Lease Agreement with Plaintiff for the purposes of operating

a pick-up dry cleaning service at 2199 East Henrietta Road. (*Id.* ¶ 13)  Defendants had

previously entered into two other Lease Agreements for the same property with Plaintiff

dating back to 1984. (*Id.* ¶ 15)  During Defendant's tenancy at 2199 East Henrietta

Road, tetrachloroethylene ("TCE") and chlorinated volatile organic compounds

("CVOCs") were disposed of or otherwise released from the dry cleaning facility,

causing soil and groundwater contamination. (*Id.* ¶¶ 26, 27)

On March 6, 2007, Plaintiff reported the contamination to the New York State

Department of Environmental Conservation. (*Id.* ¶ 29)  Also on March 6, 2007, Plaintiff

made a written demand to Defendants, requesting that they assume the indemnification

responsibilities pursuant to the current Lease Agreement. (*Id.* ¶ 30)  Plaintiff asserts that

Defendant is liable for damages sustained by Plaintiff pursuant to the following legal

claims: 1) strict liability pursuant to Section 107(a) of CERCLA, 2) piercing the corporate

veil of United Cleaners, 3) strict liability under Article 37 of the ECL, 4) negligence, 5)

breach of contract based on Defendant's failure to investigate and remediate the

contamination existing at the site, 6) breach of contract based on Defendant's failure to

indemnify Plaintiff pursuant to the terms of the Lease Agreement, 7) common law strict

liability based on Defendant's abnormally hazardous activities, 8) private nuisance, and

9) common law indemnity. (Doc. No. 1.)

On October 18, 2007, Plaintiff filed this action and on October 24, 2007,

Defendants were served with a summons and a copy of the complaint. (Doc. Nos. 2, 3,

4, 5, 6.)  Pursuant to Rule 12(a)(1)(A) of the Federal Rules of Civil Procedure,

Defendants were required to serve an answer to the summons and complaint by

November 13, 2007.  Plaintiff agreed to three separate extensions of time for

Defendants to answer the summons and complaint. (Doc. Nos. 7, 8.)  The final

extension of time required Defendants to answer by April 8, 2008.  (Doc. No. 17.)

Defendants failed to answer and a default was entered by the Clerk on April 22, 2008.

(Doc. No. 11.)

In the fall of 2008, Plaintiff began preparing a motion for default judgment based

on Defendant's failure to answer. (Doc. No. 15.)  At the same time, Plaintiff and

Defendant began discussing the possibility of settlement of this action. (*Id.* ¶ 9)

However, Defendants were unwilling to negotiate settlement and indicated that they

would file for bankruptcy if Plaintiff filed a motion for default judgment. (*Id.* ¶ 10)

Because of these threats, Plaintiff decided to delay filing a motion for default judgment

in order to engage in further discussions regarding the possibility of settlement.  (*Id.* ¶

13)  Plaintiff and Defendant continued discussions about potential settlement options.

Defendants repeatedly expressed an interest in settling, but did not reach an

agreement. (*Id.* ¶ 13)  In the summer of 2010, almost two years after Plaintiff began

preparing a motion for default judgment, Defendants ceased all communication with

Plaintiff. (*Id.* ¶14)  Thereafter, neither party took any further action in the lawsuit until the Court issued an Order to Show Cause on December 2, 2010. (Doc. No. 12.)  Pursuant to Western District of N.Y., Local Rule of Civil Procedure 41.2, that order required Plaintiff to make a written statement as to why the case should not be dismissed for failure to prosecute. (*Id.*)  On January 18, 2011, Plaintiff filed a timely affidavit in response explaining the reasons for its failure to prosecute, and the Court was satisfied that Plaintiff had not abandoned this prosecution. Based on the affidavit in response to the Order to Show Cause (Doc. No. 15.), the Court ruled that it would not dismiss the action. (Doc. No. 23.)

On January 18, 2011, when Plaintiff filed its affidavit in response to the Order to Show Cause, Plaintiff also filed a motion for entry of a default judgment.  Defendants United Cleaners, Hanif Suleman, Nasrullah Suleman, Ali Sha Mithani, and Amir Mithani did not appear in this action.[1]

## DISCUSSION

### Rule 55 of the Federal Rules of Civil Procedure – Default and Default Judgment

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).  If a party has failed to plead or otherwise defend an action the opposing party may bring this to the court's attention.  First "Rule 55(a) empowers the clerk of the court to enter a default against a party that has not appeared or defended.  Having obtained a default from the clerk of the court, a plaintiff must next seek a judgment by default under Rule

---

[1] In the cross motion for default judgment filed by Plaintiff on January 18, 2011, Plaintiff stated that Defendants United Cleaners and Hanif Suleman had appeared in this action. However, there is no notice of appearance on the docket and it has been confirmed with Plaintiff's counsel that this was a typographical error and Defendants United Cleaners and Hanif Suleman never actually appeared.

55(b)." *Id.*  In this case, because the Clerk of the Court has already entered a default

and the Plaintiff's claim is not a sum certain, Rule 55(b)(2) applies.  Pursuant to Rule

55(b)(2), the non-defaulting party must apply to the court to request default judgment,

but only when the defaulting party has appeared in the action must the non-defaulting

party provide advance notice of its motion for default judgment. Fed. R. Civ. P. 55(b)(2).

In this case, because the Defendants never appeared in the action, Plaintiff is not

required to give advance written notice of its motion for default judgment.

In addition to considering whether the defaulting party has appeared, the Court

must also consider, "whether the facts alleged in the complaint are sufficient to state a

claim for relief as to each cause of action for which the plaintiff seeks default judgment."

*Garden City Boxing Club, Inc. v. Giambra*, No. 02-CV-839S, 2004 U.S. Dist. LEXIS

14995, 2004 WL 1698633 at *1 (W.D.N.Y. Jul. 27, 2004). If the Court determines that

the complaint is sufficient, a default judgment is entered and the allegations of the

complaint which establish a defendant's liability are accepted as true, except for those

relating to damages. *Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp.*, 973 F.2d

155, 158 (2d Cir. 1992).

**Complaint must be Sufficient to State a Claim for Relief**

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 129 U.S. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).  Federal Rule of Civil Procedure 8(a)(2) requires only a short and

plain statement of the claim showing that the pleader is entitled to relief, in order to give

the defendant fair notice of what the claim is and the grounds upon which it rests. Fed.

R. Civ. P. 8(a)(2).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft,* 129 U.S. at 1950. The Court does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.,* 550 U.S. at 570.  When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir. 1999).  In order to grant relief, this standard is applied to each of Plaintiff's claims to determine whether a sufficient claim was stated.

**Appearance**

"Ordinarily, an appearance in an action requires a formal submission to the Court." *Green*, 420 F.3d at 105.

> Circuits are divided on whether anything less than a formal appearance is necessary to actuate the notice requirement of Rule 55(b)(2). The prevailing view is that "the notice requirement contained in Rule 55(b)(2)" applies not only to parties who have formally appeared, but also to those parties who, although delaying in a formal sense by failing to file pleadings within the twenty-day period, have otherwise indicated to the moving party a clear purpose to defend the suit.

*Id.*  "[I]n certain circumstances courts have been willing to find that a party had informally appeared in an action based on settlement discussions, in each of those cases the defendant clearly indicated to the plaintiff that if settlement negotiations failed, the defendant would diligently defend the suit." *Id* at 107.

Here, Defendants never formally appeared in the action.  Defendants expressed their desire to settle the action with Plaintiff, but Defendants never expressed their intent

to defend the action if settlement negotiations failed.  Originally, when Plaintiff told Defendants that it was going to file default judgment, Defendants threatened to file for bankruptcy in order to evade defending themselves. This correspondence between Plaintiff and Defendants is not sufficient for an informal appearance and falls far short of a formal appearance.  In *Green,* the court held that telephone calls and correspondence with the State and its counsel following the filing of the complaint did not amount to an "informal" appearance. *Id* at 106.  In *Green*, Defendant's request for time extension did not show that they had any intention of defending the lawsuit. *Id* at 107.  Similar to *Green*, in the present case, Plaintiff agreed to three separate extensions of time for Defendants to answer the summons and complaint. However, based on the facts of the case at hand and the controlling case law, Defendants have never appeared.

### *Pro Se* Defendants

In this case, there is no indication that Defendants had secured counsel or attempted to secured counsel. "[W]hile *pro se* litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including *pro ses*, have an obligation to comply with court orders. When they flout that obligation they, like all litigants, must suffer the consequences of their actions."  *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988).  Accordingly, in this case, Defendants should not be treated more leniently based on their *pro se* status.

### Claim 1: Strict Liability Pursuant to Section 107(a) of CERCLA

CERCLA is a comprehensive federal law governing the remediation of sites contaminated with pollutants. Two of its primary goals include "encouraging the timely cleanup of hazardous waste sites," and "placing the cost of that [cleanup] on those

responsible for creating or maintaining the hazardous condition." *Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc.*, 423 F.3d 90, 94 (2d Cir. 2005).

Under section 107(a) of CERCLA, Title 42 U.S.C. § 9607, liability attaches to "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2) (2011).  The second basis for CERCLA liability, operating a facility, is at issue here. To be liable as an operator of a facility, the Supreme Court has instructed, a person "must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." *United States v. Bestfoods*, 524 U.S. 51, 66-67, (1998); *see also Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 332 n.3 (2d Cir. 2000).  Hazardous waste is defined under CERCLA as "elements, compounds, mixtures, solutions, and substances which, when released into the environment may present substantial danger to the public health or welfare or the environment." 42 USCS § 9602.

According to the facts stated in the complaint, Defendants can be classified as operators of a facility. The contaminants released by Defendants, TCE and CVOCs, can be classified as hazardous waste under CERCLA because they are substances which, when released into the environment could present substantial danger to public health or the environment. Defendants' operations in the facility were directly related to the leakage because it was their acts or omissions which caused hazardous dry cleaning waste to be released into the environment.  Therefore, in this regard, Plaintiff does state a sufficient claim to grant relief.

**Claim 2: Piercing the Corporate Veil of United Cleaners**

To pierce the corporate veil, Plaintiff must generally show two things: "'(1) the owners exercised complete domination of the corporation with respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.'" *Playwell Toy, Inc. v. Bureau Veritas Consumer Prods. Servs*., No. 03-CV-0704C. 2007 U.S. Dist. LEXIS 72874, 29-30 (W.D.N.Y. Sept. 28, 2007) (quoting *Astroworks, Inc. v. Astroexhibit*, Inc., 257 F. Supp. 2d 609, 614 n.8 (S.D.N.Y. 2003)).  However, "[p]urely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under Rule 8(a)'s liberal notice pleading standard." *In re Currency Conversion Fee Antitrust Litig*., 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003); *see also DeJesus v. Sears, Roebuck & Co*., 87 F.3d 65, 70 (2d Cir. 1996). "Plaintiffs must come forward with 'the showing of actual domination required to pierce the corporate veil.'" *De Jesus v. Sears, Roebuck & Co*., 87 F.3d 65, 70 (2d Cir. 1996) (quoting *American Renaissance Lines, Inc. v. Saxis S.S. Co*., 502 F.2d 674, 677 (2d Cir. 1974)).

The complaint states the following concerning the individual defendants' control of the corporate entity:

> 22. Upon information and belief, at all material and relevant times, Defendants Rani Suleman, Nasmllah Suleman, Ali Sha, and Amir Ali Mithani were and/or are officers, employees, shareholders and principals of United Cleaners who directed the workings and managed and conducted the affairs of United Cleaners and the dry cleaning facility, as well as the persons who managed, directed and conducted the operations that were specifically related to the Releases of the Contamination that occurred at the Premises, and/or retained the decision-making authority with regards to compliance within environmental laws and regulations and the general operations of the dry cleaning facility (hereinafter collectively referred to as the "Individual Defendants").

23. Upon information and belief, the Individual Defendants were or are corporate officers, employees, directors, and/or shareholders who controlled the corporate conduct of United Cleaners and, thus, individually participated in the conduct that constituted a tort of United Cleaners.…

49. Upon information and belief, at all material and relevant times, United Cleaners was dominated and controlled by the Individual Defendants, lacked a separate corporate existence, and failed to adhere to corporate formality when operating the dry cleaning facility at the Premises.

50. Upon information and belief, the Individual Defendants exercised complete dominion and control over United Cleaners, the dry cleaning facility, and the dry cleaning operations which ultimately caused the Contamination at the Premises.

51. Upon information and belief, the Individual Defendants were and/or are corporate officers who were directly, actively, and knowingly involved in the culpable activities and omission which led to the Releases of the Contamination at the Premises.

(Compl. ¶¶ 22-23, 49-51.) However, the allegations in the complaint are conclusory.

Therefore, in this regard, Plaintiff does not state a sufficient claim to grant relief. *See*

*P.A.C. Consolidators LTD v. United Cargo Sys.*, 10 CV 1981 (JBW), 2011 U.S. Dist.

LEXIS 80840, *17 (E.D.N.Y. Jul. 25, 2011) (allegations that individual defendants

exercised dominion and control over corporation, and that corporations were mere

instrumentalities of individual defendants, insufficient to state a claim). Consequently,

the Court cannot grant judgment on this claim.

**Claim 3: Strict Liability Pursuant to Article 37 of the ECL**

Pursuant to ECL Article 37, "[n]o person shall store or release to the environment

substances hazardous or acutely hazardous to public health, safety or the environment

in contravention of rules and regulations promulgated pursuant hereto." N.Y. Envtl.

Conserv. Law § 37-0107. 3 (Consol. 2011).  According to ECL Article 27,

"Hazardous waste" means a waste or combination of wastes, which because of its quantity, concentration, or

> physical, chemical or infectious characteristics may: a.
> Cause, or significantly contribute to an increase in mortality
> or an increase in serious irreversible, or incapacitating
> reversible illness; or b. Pose a substantial present or
> potential hazard to human health or the environment when
> improperly treated, stored, transported, disposed, or
> otherwise managed.

Id. § 27-0901.  The contaminants released by Defendants, TCE and CVOCs, are

classified under the Article 27 definition of hazardous substances because they pose a

substantial, potential hazard to human health or the environment when disposed of

improperly. Therefore, release of TCE and CVOCs to the environment is a violation

under Article 37 of the ECL. Thus, in this regard, Plaintiff does state a sufficient claim to

grant relief.

**Claim 4: Negligence**

To make out a prima facie case of negligence under New York law, a plaintiff

must establish "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof,

and (3) injury proximately resulting therefrom." *Solomon v. City of New York*, 66 N.Y.2d

1026 (1985); *Kazanoff v. United States*, 945 F.2d 32, 35 (2d Cir. 1991). It is well settled

as a matter of New York law that to establish a prima facie case of negligence, a plaintiff

must show that the defendant either created a dangerous condition, or had actual or

constructive notice of a dangerous condition. *Samuels v. Marriott Int'l, Inc.*, 86 Fed.

Appx. 453, 455 (2d Cir. 2004). Here, Defendants created a dangerous condition when

they released hazardous waste on to Plaintiff's property.

Based on the Lease Agreement, Defendants owed a duty to Plaintiff. Defendants

breached the lease agreement by releasing hazardous substances onto Plaintiff's

property. Defendants breach proximately caused Injury to the property. Therefore, in

this regard, Plaintiff does state a sufficient claim to grant relief.

**Claim 5: Breach of Contract Based on Defendant's Failure to Investigate and Remediate the Contamination Existing at the Site**

**Claim 6: Breach of Contract Based on Defendant's Failure to Indemnify Plaintiff Pursuant to the terms of the Lease Agreement**

Plaintiff's complaint states two claims for breach of contract. The first claim is

based on Defendants' failure to investigate and remediate the contamination. The

second claim is based on Defendants' failure to indemnify Plaintiff.

The elements of a breach of contract claim under New York law are: (1) the

existence of a contract; (2) performance by the party seeking recovery; (3)

nonperformance by the other party; and (4) damages attributable to the breach. *Sauer*

*v. Xerox Corp.*, 95 F. Supp. 2d 125, 128 (W.D.N.Y. 2000). In this case, there is a valid

contract between Plaintiff and Defendant. The contract, signed on April 1, 1993, is in the

form of a Lease Agreement for the premises. Pursuant to the terms of the Lease

Agreement, Defendants are liable to Plaintiff for the cost of remediation and

investigation of the contamination. Here, Defendants breached the contract when they

failed to fulfill their obligation to pay Plaintiff for the cost of remediation and

investigation. The damages that Plaintiff wishes to recover are directly attributable to

Defendants' breach.

Generally, in order for there to be contractual duty of indemnity, there must have

been an agreement between the proposed indemnitee and the proposed indemnitor.

*Playwell Toy, Inc.,* 2007 U.S. Dist. LEXIS 72874 at 22. Indemnification under New York

law, whether categorized as implied or equitable, is not available where the party

seeking indemnification was "partially at fault" or "responsible to any degree."

*Monaghan v. SZS 33 Assoc.*, L.P., 73 F.3d 1276, 1284 (2d Cir. 1996). The record indicates that Plaintiff and Defendants had a valid contract. The record does not indicate that Plaintiff was partially at fault or responsible to any degree. Therefore, in regard to claims five and six, Plaintiff does state a sufficient claim to grant relief.

**Claim 7: Common Law Strict Liability Based on Defendants'
Abnormally Hazardous Activities**

The New York Court of Appeals adopted the guidelines in the Restatement of Torts Second § 520 for determining whether an activity is abnormally dangerous:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes.

*United States v. Hooker Chems. & Plastics Corp.*, 722 F. Supp. 960, 966 (W.D.N.Y. 1989) (*citing* Restatement (Second) of Torts § 520 (1977)). In the subject action, the use of TCE and CVOCs at a dry cleaning facility is not uncommon and the use of these substances is appropriate for the facility in which they were being used. While these substances are common and appropriate for Defendants' purpose, a high risk of potential harm exists to the person, land or chattels of others. However, if Defendants had exercised reasonable care, the risk of contamination may have been eliminated. Therefore, in this regard, Plaintiff does not state a sufficient claim to grant relief because these substances are not abnormally hazardous as defined by the Restatement of Torts Second.

**Claim 8: Private Nuisance**

"A private nuisance threatens one person or a relatively few, an essential feature being an interference with the use or enjoyment of land. It is actionable by the individual person or persons whose rights have been disturbed." *Copart Indus. v. Consolidated Edison Co.*, 41 N.Y.2d 564, 568 (1977); *see also New York v. Shore Realty Corp.*, 759 F.2d 1032, 1050 (2d Cir. 1985). In order to establish liability under a private nuisance theory, Plaintiff must show that Defendants' conduct is a legal cause of the invasion of the interest in the private use and enjoyment of land and such invasion is: "(1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under the rules governing liability for abnormally dangerous conditions or activities." *Copart*, 41 N.Y.2d at 569.

Plaintiff, in this case, has a valid claim for private nuisance because its use or enjoyment of the land was threatened by Defendants' negligent or reckless invasion. As stated in the complaint, Defendants' acts or omissions caused an interference with Plaintiff's use and enjoyment of land. Therefore, in this regard, Plaintiff does state a sufficient claim to grant relief.

**Claim 9: Common Law Indemnity**

"Indemnity obligations, whether imposed by contract or by law, require the indemnitor to hold the indemnitee harmless from costs in connection with a particular class of claims." *Peter Fabrics, Inc. v. S.S. "Hermes,"* 765 F.2d 306, 316 (2d Cir. 1985). Under New York law, the common law right to indemnification "arises when one party is compelled to pay for the wrong of another." *Twitchell v. Town of Pittsford*, 106 A.D.2d 903, 483 N.Y.S.2d 524 (N.Y. App. Div. 1984), aff'd, 66 N.Y.2d 824, 489 N.E.2d 250, 498

N.Y.S.2d 363 (1985); *see also Playwell Toy, Inc. v. Bureau Veritas Consumer Prods. Servs.,* 2007 U.S. Dist. LEXIS 72874 (W.D.N.Y. 2007).

As previously stated, the indemnity obligations are imposed through the Lease Agreement, but they are additionally imposed pursuant to CERCLA, Article 37 of the ECL and/or the common law of New York State. As the complaint states, the contamination was caused solely by the dry cleaning operations conducted by Defendants.  However, Plaintiff has borne all costs that resulted from Defendants' wrong.  According to CERCLA, Article 37 of the ECL and/or the common law of New York, Defendants are responsible for reimbursing Plaintiff for costs associated with Defendants' wrong.

## CONCLUSION

Plaintiff's motion for default judgment under Rule 55 of the Federal Rules of Civil Procedure is granted in part and denied in part. The only claims insufficient to grant relief are, Claim 2: Pierce the Corporate Veil of United Cleaners and Claim 7: Common Law Strict Liability Based on Defendants' Abnormally Hazardous Activities. All other claims stated by Plaintiff are sufficient to grant relief. The Court will set date for inquest by separate order.

Dated:      September 13, 2011
            Rochester, New York


                        ENTER:

                                /s/ Charles J. Siragusa_____
                                CHARLES J. SIRAGUSA
                                United States District Judge